Otis **CAREY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–84–0021–CR.

Court of Appeals of Texas,
Amarillo.

July 23, 1985.

Rehearing Denied Aug. 16, 1985.

V.G. Kolius, Jeff Blackburn, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., James A. Farren and Allen B. Walter, Asst. Dist. Attys., Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

A jury convicted appellant Otis Carey, who was indicted for the murder of Ora Lee Johnson "by stabbing her with an unknown object," of voluntary manslaughter. The jury then assessed appellant's punishment at a $10,000 fine and confinement for twenty (20) years in the Texas Department of Corrections.

Appellant seeks a reversal and acquittal on the ground that the evidence is insufficient to support the conviction because the State did not prove its allegation that the means of death was unknown to the grand jurors. Alternatively, appellant seeks a reversal and remand on the two grounds that his Federal and State constitutional rights were violated by the seizure of evidence as the fruits of his unlawful arrest and its erroneous admission into evidence. Overruling the first ground and sustaining the second and third grounds of error, we reverse and remand.

A resume of the pertinent testimonial facts positions the three grounds of error for disposition. From the testimony of Mary Ross Johnson, mother of the deceased Ora Lee who lived in a next door apartment, it is known that she was awakened in the early morning hours of 17 May 1983 by appellant's yelling and knocking at her apartment door. Opening the door, she saw appellant, Ora Lee's boyfriend, cradling Ora Lee's body, which lay across the steps "bloody all over." Appellant said that Ora Lee had "been cut, let's take her to the doctor." Being unsuccessful in her attempts to contact the police or summon an ambulance, Mrs. Johnson used her car to take Ora Lee, held by appellant in his lap, to an Amarillo hospital. The three were accompanied by another of Mrs. Johnson's daughters, Jewellene, and Jewellene's boyfriend, Melvin Kelly.

After being told by a nurse that Ora Lee was still alive and that her bleeding had been stopped, Mrs. Johnson left the hospital to see about some children in her home. Thereafter, at about 1:50 a.m., Amarillo policemen John Dawson and Gerald Schlong arrived at the hospital in response

to a call. When officer Schlong saw the condition of Ora Lee, he advised his supervisor, Sergeant Walter Yerger, of the situation, and then joined Dawson, to whom appellant said, "She was stabbed in the neck." Both officers observed that appellant was nervous and, to Dawson, appeared intoxicated.

At approximately 2:10 or 2:15 a.m., Sergeant Yerger arrived at the hospital, where he saw the appellant. The sergeant and Schlong departed to inspect Ora Lee's apartment.

Dawson first attempted to talk with Jewellene, but she was so excited that he was only able to secure the name of the victim. Next, Dawson talked with Kelly and the unrecorded conversation indicated to Dawson the need to investigate further.

Then, Dawson read appellant "his rights"—presumably those ennunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)—and engaged him in a conversation of several minutes. According to the officer, appellant said that he "had come up and found Ora Lee running back toward" Mrs. Johnson's apartment which, as Dawson understood, "had something to do with a car out front, somebody he had seen over there before." Appellant gave Dawson a description of an individual and a license plate number. Appellant also detailed the specifics of how Ora Lee got to the hospital. Dawson described appellant as "fidgeting a lot ... he was sweating too much for a cold night, and he just kept on cursing a lot," which "just didn't strike me as right." Dawson, fixing the time as "[a] little after 2:00 [a.m.]," put appellant, unsearched and unshackled, in the front seat of a police car and, with Jewellene in the back seat, took him to the police department.

At the police department, Dawson placed appellant in a cubicle in the juvenile section and visited with him for a few minutes until Sergeant Bert Collins, assigned to the Special Crimes Unit, arrived. Collins had appellant empty his pockets and conducted a "pat down" search of his person. No pocket knife was seen or found. Appellant

again was advised of "his rights" and interrogated twice, during which he was informed that Ora Lee had died. A statement by appellant was reduced to writing.

As a result of the interrogations and shared information from officers—who had investigated the scene and the vehicle described by appellant, and had talked with witnesses and taken statements—Dawson requested Sergeant Yerger to, and he did, sign a detention order for appellant sometime between 3:30 and 3:45 a.m. Appellant was booked and, after he removed his clothing and put on jail coveralls, he was placed in jail.

Appellant's clothing, bloodied and dirty, was placed unexamined in paper sacks for retention as evidence. Subsequently, on May 26, as Sergeant Modeina Holmes was preparing to package the clothing for shipment to the FBI laboratory in Washington, she found a pocket knife inside one of appellant's socks. The knife had reddish-brown stains on the ends and on the blades. The evidence was shipped to the FBI laboratory.

Some twenty-one days later on June 16, the indictment was returned charging appellant with the murder of the deceased "by stabbing her with an unknown object." At an unrecorded later date, the evidence submitted to the FBI laboratory was returned; and, at trial, there was evidence that the source of the knife stains was human blood, which was not present in a sufficient amount to permit classification by type.

Doctor Ralph Erdmann, whose specialty is pathology, performed an autopsy on the deceased in the early afternoon hours of May 17. He concluded that the cause of death was a stab wound to the neck inflicted by a "very sharp instrument," which injured the carotid artery and caused the deceased to bleed to death. The measurements of the pocket knife blade and the size of the wound, taken by Dr. Erdmann and Sergeant Holmes, were compatible and, in the doctor's opinion, the knife could have inflicted the wound; yet, the doctor could not say that the knife inflicted the

wound because, in his opinion, "there are simply millions" of sharp edges that could have caused the deceased's wound.

 In considering appellant's first contention that the State failed to prove the allegation that the means of death was unknown to the grand jurors, we commence with the historical recognition that where, as here, the grand jurors allege in the indictment that the means causing the death is unknown, the allegation is a material one which must be proved. *Mitchell v. State,* 111 Tex.Cr.R. 101, 10 S.W.2d 87, 89 (1928). The evidence of the pocket knife in this prosecution raised the issue whether the means of death was unknown to the grand jurors; hence, it became the burden of the State to prove that by the use of reasonable diligence, the grand jurors were uncertain of the means of death, *i.e.,* the object used. *Id.* Usually, such fact should be, but in this prosecution was not, proved by the testimony of some member of the grand jury or someone in position to know what took place. *Gragg v. State,* 152 Tex. Cr.R. 386, 214 S.W.2d 292, 294 (1948). Nevertheless, the burden of proof is discharged when the evidence adduced upon trial shows the means of death to be uncertain. *Id.; Mitchell v. State, supra.*

 Without adverting to the arguments of appellant and the State, neither of which is persuasive, it suffices to state that the evidence adduced at trial clearly shows the means of death, *i.e.,* the object used, was unknown and uncertain. No testifying witness saw the stabbing and, although the pocket knife recovered from appellant's sock may have been the object used, even the expertise of Dr. Erdmann was insufficient to isolate the actual object used from among "millions" of sharp edges that could have inflicted the wound. It logically follows that the lay grand jurors could not, by the use of due diligence, have been certain of the means of death. Thus, the state of the evidence sufficiently proves the allegation of a stabbing with an unknown object. *Accord, Gragg v. State, supra.* The first ground of error is overruled.

Over appellant's objections that photographs of the knife, the knife itself, and his pants and socks were the fruits of an illegal arrest, the trial court admitted the items into evidence. Appellant advances, by his second and third grounds of error, the contentions that the seizure of these items violated his Federal and State constitutional rights and the admission of them into evidence constituted reversible error.

 It is certain that, at some point, appellant was arrested without a warrant authorized by a judicial officer. Given the warrantless arrest, the State had the burden of showing probable cause for the arrest. *Roberts v. State,* 545 S.W.2d 157, 158–59 (Tex.Cr.App.1977).

Appellant submits that his arrest occurred at the hospital. The State seemingly agrees by offering two justifications for the arrest then, but also argues that the arrest occurred at the police department when the shared information of the officers produced probable cause for the detention order.

 A person is seized by the police when in view of all the surrounding circumstances, a reasonable person would have believed that he was not free to leave. *Herrera v. State,* 665 S.W.2d 497, 503 (Tex. App.—Amarillo 1983, pet'n ref'd). And an arrest is complete whenever a person's liberty of movement is restricted or restrained. *Hardinge v. State,* 500 S.W.2d 870, 873 (Tex.Cr.App.1973).

 Obviously, then, when appellant initiated his meeting with officer Dawson, who was in uniform, at the hospital and a conversation ensued, there was no seizure of appellant; indeed, a temporary detention of appellant for further investigation was justified, even though the circumstances described did not amount to probable cause for appellant's arrest. Yet, the action of Dawson, acting under the badge of his authority after having advised appellant of the *Miranda* warnings, in putting appellant in the police car without telling him he was free to leave, amounted to a detention indistinguishable from an arrest. *Ussery*

*v. State*, 651 S.W.2d 767, 770 (Tex.Cr.App. 1983).

An arrest resulted even though Dawson testified at trial that he took appellant to the police department to question him as a witness, and that appellant was free to go at anytime prior to the time Dawson asked for the detention order. However, Dawson never advised appellant that he was free to go and Sergeant Yerger did not consider that appellant was unrestrained. The sergeant testified that when he saw appellant at the hospital, he was not free to leave and would have been stopped if he tried to leave, explaining afterwards that he considered appellant a material witness and not a suspect at the time. The arrest did not depend on the intentions of the officers, but occurred, as we have noted, when appellant was put under official restraint, *De Lira v. State*, 164 Tex.Cr.R. 194, 297 S.W.2d 953, 955 (1956), which must be supported by probable cause. *Ussery v. State*, *supra*. But even if the officers' intentions are fully credited, the detention for the custodial interrogation is also indistinguishable from a traditional arrest and must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 212–15, 99 S.Ct. 2248, 2256–58, 60 L.Ed.2d 824 (1979).

Probable cause was not shown to exist at that time by the information possessed by Dawson as he articulated it or as it was evidenced. Then, Dawson merely knew that appellant had come upon Ora Lee, who had been stabbed in the neck, and how she got to the hospital; that appellant had seen an individual and a car at Ora Lee's apartment; and that appellant, who was nervous, intoxicated, and sweating and cursing more than Dawson thought right, had more blood on his clothing than Jewellene or Kelly which, by appellant's account, likely resulted from his holding the bleeding Ora Lee. At this point, Dawson had not talked with Mrs. Johnson, nor with Jewellene other than to secure Ora Lee's name, nor to any other officer who had information about the investigation. What information, if any, he received from Kelly

is unrevealed. Thus, the evidenced knowledge then known by Dawson could amount to no more than a general suspicion of appellant's connection to the crime, which falls far short of probable cause to arrest appellant. *Hull v. State*, 613 S.W.2d 735, 739 (Tex.Cr.App.1981). In fact, the knowledge did not even raise Dawson's suspicions, for he readily conceded that appellant did not become a suspect until he told inconsistent stories at the police department.

Notwithstanding, the State argues that the warrantless arrest at the hospital was justified by two statutes. One authorizes a warrantless arrest for public intoxication to the degree that the arrestee may endanger himself or another. Tex.Penal Code Ann. § 42.08(a) (Vernon 1974). The other authorizes any peace officer to make a warrantless arrest of a person found in a suspicious place under circumstances which reasonably show he has been guilty of some felony or breach of the peace or is about to commit some crime against the laws. Tex. Code Crim.Pro.Ann. art. 14.03(a) (Vernon Supp.1985). The immediate fallacy in the State's argument is that there is neither testimony nor other evidential indication that appellant was arrested for either offense and, therefore, the challenged items of evidence were not seized incident to such an arrest. *Davis v. State*, 576 S.W.2d 378, 380 (Tex.Cr.App.1978), *rehearing denied en banc* (1979). But, beyond that, at the time of appellant's arrest, no probable cause was shown to arrest him for either of these offenses.

Initially, it was held that to justify a warrantless arrest for the public intoxication denounced by section 42.08(a) of the Penal Code, the arresting officer must have reason to believe the suspect is intoxicated "to the degree that he may endanger himself or another;" thus, even though the suspect appears intoxicated to the officer, if there is no indication he was in any way a danger to himself or anyone else, there is no probable cause for an arrest for public intoxication. *Davis v. State*, *supra*, n. 2. Here, there is no indication, by testimony

or otherwise, that appellant, albeit intoxicated, was intoxicated to the degree that he was in any way a danger to himself or to anyone else.

Subsequently, approximately a month after the rehearing was denied en banc in *Davis,* the Court held on a rehearing in *Britton v. State,* 578 S.W.2d 685 (Tex.Cr. App.1978), *cert. denied* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979), that, in considering the proof of probable cause for an arrest for public intoxication, the determination as to the possible danger element is reviewed not under the standard used in a judicial determination of guilt, but under the traditional standard of whether the officer's knowledge at the time would warrant a prudent man in believing that the suspect had committed or was committing an offense. *Id.* at 689. Again, and as earlier illustrated, there is no indication in this record, by testimony or otherwise, that Dawson was possessed of knowledge which would warrant him as a prudent man to believe that appellant, albeit intoxicated, posed such a danger to himself or to another that he had committed or was committing the offense of public intoxication. So, under either standard of proof, probable cause did not exist to arrest appellant for the offense of public intoxication.

In proposing that appellant was subject to arrest under the authority of article 14.03(a) of the Code of Criminal Procedure, the State mistakenly assumes, by the substance of its argument, that all information eventually known to the officers can be considered in ascertaining whether appellant was in a suspicious place under circumstances reasonably showing he has committed or is about to commit some offense. It is only when an officer discovers a person in a suspicious place under such circumstances that a lawful warrantless arrest is sanctioned by the statute. *Lowery v. State,* 499 S.W.2d 160, 164 (Tex.Cr.App.1973).

Officers Dawson and Schlong found appellant in the hospital and there is no characterization of the hospital as a suspicious place. As previously noted,

Dawson then had no knowledge of circumstances which reasonably showed that appellant had committed or was about to commit any offense. Consequently, Dawson lacked probable cause to effect the arrest of appellant under the authority of this statute. *Accord, Hardinge v. State, supra,* at 873–74; *Lowery v. State, supra.*

Since appellant's warrantless arrest without probable cause was violative of both the Federal and State constitutions, the seizure of the challenged evidence cannot be justified as incident to a lawful arrest. Therefore, the admission of the evidence constituted reversible error. *Hull v. State, supra,* at 740. Appellant's second and third grounds of error are sustained.

The judgment is reversed and the cause is remanded.

Publish. Tex.Cr.App.R. 207(a).