OPINION
 

 FARRIS, Justice.
 

 Salazar appeals convictions for two counts of armed burglary of a habitation using a deadly weapon; possession of a prohibited weapon, a short-barrel shotgun; and aggravated assault with a deadly weapon. Because the offenses were part of a single transaction, they were consolidated for trial by agreement. On appeal, Salazar contends the trial court erred: (1) by denying his motion to suppress the firearm seized from a vehicle in a warrantless search; (2) by overruling his objection to evidence concerning the extraneous offense of attempted capital murder committed by his brother; and (3) by denying his motion for mistrial after the prosecutor argued that the jury could convict Salazar of aggravated assault on a theory that was neither alleged in the indictment nor charged to the jury. We overrule Salazar’s points of error and affirm his convictions because the warrantless search was not violative of any law, the offense committed by Salazar’s brother is not an extraneous offense as contemplated by the rules of evidence, and the improper jury argument was properly cured and did not harm Salazar.
 

 In his first point of error, Salazar contends that the warrantless search of his person and the vehicle in which he was seated violated chapter 14 of the Texas Code of Criminal Procedure, his rights under article I, section 9 of the Texas Constitution, and his rights under the fourth amendment of the United States Constitution. Chapter 14 of the Texas Code of Criminal Procedure governs arrests without warrants, allowing them to take place under several circumstances, including, when an offense is committed within the officer's view or when the subject is found in a suspicious place and under circumstances which reasonably show that such person has been guilty of some felony or breach of the peace, or threatens, or is about to commit some offense against the laws.
 
 See
 
 TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977) & art. 14.03 (Vernon Supp.1991). Article I, section 9 of the Texas Constitution provides that people shall be secure in their persons, houses, papers, and possessions, from all unreasonable seizures or searches; the fourth amendment of the United States Constitution reads very similarly.
 
 See
 
 TEX. CONST, art. I, sec. 9; U.S. CONST, amend. IV. Reviewing the evidence, we find no violation of these laws.
 

 Around 5:30 a.m. police officers were called to the Dry Dock Apartments, the scene of an armed burglary in progress; they were told it involved “multiple” suspects. Officer Hendrickson was the first to arrive. He was driving through the complex towards unit 13D, where the crime was reported to be taking place when he noticed a small white vehicle with a large man inside parked very near that same unit. Salazar was the individual inside the car. When he saw Hendrickson, he ducked down as if to hide. Hendrickson continued to watch him, and every time Salazar would look over the seat and see Hendrick-son looking at him, he would duck down again. Because of Salazar’s actions, Hen-drickson was suspicious that the person in the car was connected with the ongoing crime; he relayed this to other officers on their way to the scene and went on to investigate at the apartment. As Hen-drickson entered the breezeway just outside apartment 13D, he encountered a young girl who was crying and obviously shaken. As he headed towards her, she looked beyond him and screamed. Hen-drickson turned to see Salazar’s brother who shot at him twice with a rifle. Hen-drickson returned fire, but was unable to apprehend this suspect.
 

 By the time the other officers arrived, they were aware of the shooting and of Officer Hendrickson’s suspicions about the individual in the white car. They continued to watch Salazar, noticing that he kept reaching into the back behind the passenger seat. At one point, he started the vehicle and attempted to leave but was instructed by the officers via their patrol car loud speakers to turn off the motor.
 

 
 *540
 
 He did so but did not leave the vehicle, instead he continued reaching to something behind the passenger seat. Salazar’s actions, added to the information the officers already had, was enough to create a reasonable suspicion in their minds. The officers told Salazar to get out of the car, put his hands on the back of his head, and back up to where they were standing. As Salazar did so, one officer handcuffed him and patted him down finding six shotgun shells, while another went over to the car and saw a short-barrel shotgun, cocked and ready to fire, lying in plain view on the floorboard behind the passenger seat. The officer reached into the car and removed the shotgun. Salazar was taken over to a squad car, charged with possession of an illegal weapon, and instructed of his rights.
 

 A brief stop of a suspicious individual in order to momentarily maintain status quo while obtaining more information may be reasonable in light of facts known to the officer at the time.
 
 Adams v. Williams,
 
 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972). The officer must, in light of his experience and general knowledge, have specific and articulable facts, however, which taken together with rational inferences from those facts, reasonably warrant such a stop.
 
 United States v. Brignoni-Ponce,
 
 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616 (1975);
 
 Terry v. Ohio,
 
 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). A reasonable suspicion, then, “is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the ‘totality of the circumstances — the whole picture,’ [cite omitted], that must be taken into account when evaluating whether there is reasonable suspicion.”
 
 Alabama v. White,
 
 — U.S. -, -, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).
 

 We hold that the officers’ actions did not violate the Texas Code of Criminal Procedure, nor the Texas Constitution, nor the United States Constitution. The suspicious nature of Salazar’s actions and the circumstances surrounding the incident were enough to create a reasonable suspicion in the officers’ minds and justified the war-rantless search and the actions they took in conducting it. Indeed, these are the factors considered when determining whether police conduct is reasonable.
 
 See Gearing v. State,
 
 685 S.W.2d 326, 328 (Tex.Crim.App.1985), (citing
 
 Shaffer v. State,
 
 562 S.W.2d 853 (Tex.Crim.App. [Panel Op.] 1978)) and
 
 Johnson v. State,
 
 658 S.W.2d 623 (Tex.Crim.App.1983) (an officer’s experience and personal knowledge together with inferences from articulable facts can reasonably warrant intrusion on a citizen);
 
 Startling v. State,
 
 743 S.W.2d 767, 771 (Tex.App.—Port Worth 1988, pet. ref’d). The United States Supreme Court ruled similarly in
 
 Brown v. Texas,
 
 holding the “situation is to be distinguished from the observations of a trained, experienced police officer who is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.”
 
 Brown v. Texas,
 
 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641, n. 2, 61 L.Ed.2d 357 (1979). Knowing that there were multiple armed suspects involved in a burglary in progress, that one suspect had already shot at a police officer, and that appellant was acting suspiciously, the officers were reasonable in their actions and in this investigative stop. Handcuffing the appellant was simply a reasonable corollary to the investigative detention based on the circumstances.
 
 United States v. Furry,
 
 545 F.2d 217, 220 (D.C.Cir.1976). Indeed, had the officers acted otherwise, they may have jeopardized their own safety.
 
 See Terry,
 
 392 U.S. at 29, 88 S.Ct. at 1883, 20 L.Ed.2d 889. As we hold that the actions of the police were not in violation of any law, it follows that the seizure of the short-barrelled shotgun was also proper. Even further, the shotgun was in the officer’s plain view when he approached the vehicle, so it was no error to introduce it at trial.
 
 Gearing,
 
 685 S.W.2d at 328. This point of error is overruled.
 

 Salazar contends in his second point of error that the court erred in overruling his objection to evidence of the extraneous offense of attempted capital murder committed by his brother. (Although the
 
 *541
 
 brothers both took part in the criminal episode, they were tried separately for their crimes.) The problem with this argument is that the brother’s acts are not an extraneous offense as contemplated by the statute.
 
 See
 
 TEX.R.CRIM.EVID. 404(b). The Texas rule was adopted from the same Federal Rule of Evidence which is worded almost identically to the Texas rule and which was interpreted to apply only to acts committed by the defendant himself.
 
 See United States v. Sepulveda,
 
 710 F.2d 188, 189 (5th Cir.1983). The Texas Court of Criminal Appeals agreed with this interpretation, ruling that any evidence which shows that the accused is free of guilt in regards to the “extraneous offense” committed by another, but tends to connect the accused with the charged offense, is admissible because no undue prejudice to the accused can result from the showing of the offense committed by another.
 
 Brown v. State, 505
 
 S.W.2d 850, 856 (Tex.Crim.App. 1974). In addition to not being an “extraneous offense” under the evidence rules, the offense committed by Salazar’s brother is also relevant to the crime with which Salazar is charged, and helps explain to the jury the circumstances thereof.
 
 See United States v. Derring,
 
 592 F.2d 1003, 1007 (8th Cir.1979);
 
 Albrecht v. State,
 
 486 S.W.2d 97, 100 (Tex.Crim.App.1972). Consequently, Salazar’s second point of error is overruled.
 

 Salazar contends in his third point that the court erred by denying his motion for mistrial after the prosecutor told the jury during final argument that they could convict Salazar by finding him guilty as a party to the similar offenses committed by his brother. Objection was made to this argument as the party theory was not alleged in the indictment or mentioned in the court’s charge. The judge instructed the jury to disregard the prosecutor’s argument, but denied the motion for mistrial. The instruction to disregard is generally sufficient to cure error resulting from improper jury argument.
 
 Anderson v. State,
 
 633 S.W.2d 851, 855 (Tex.Crim.App. [Panel Op.] 1982);
 
 Hodge v. State,
 
 631 S.W.2d 754, 759 (Tex.Crim.App. [Panel Op.] 1982). However, it must still be determined if any harm resulted from the improper argument, and this usually involves a two-step process.
 
 Rose v. State,
 
 752 S.W.2d 529, 553 (Tex.Crim.App.1988) (opinion on reh’g). In the first step, we have determined that error occurred in the trial. In the second, we must determine whether the error calls for reversal of the conviction.
 
 See id.
 
 The general harmless error test to be applied in criminal cases is set out in TEX.R.APP.P. 81(b)(2) which says the judgment must be reversed unless this court determines beyond a reasonable doubt that the error did not contribute to the conviction.
 

 Considering the evidence before us, we are able to meet this test and overrule Salazar’s last point of error, affirming his conviction. We not only have the testimony of the police officers who observed Salazar and found the shotgun and shells in his possession, but also the testimony of one of the victims of the crime who related to the jury the part which Salazar played in the offenses, including holding the gun to the head of one of the roommates, threatening him, and taking the box which contained the drugs. Because the evidence is so overwhelming, we cannot find that this single error of the prosecutor, cured by an instruction to disregard, contributed to Salazar’s convictions.
 

 Salazar’s points of error are overruled, and his convictions are affirmed.