**Carlos Rafael ZAYAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–96–434–CR.**

Court of Appeals of Texas, Corpus Christi.

April 16, 1998.

Discretionary Review Refused Sept. 16, 1998.

Mark Alexander, McAllen, for Appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Edinburg, for State.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

YANEZ, Justice.

After pleading not guilty, Carlos Rafael Zayas was tried before a jury and found guilty of burglary of a habitation.[1] By four points of error, appellant challenges the conviction, arguing that the trial court erred in allowing improperly obtained evidence to be presented to the jury, refusing to declare a mistrial based upon improper argument by the State, and not allowing the defense to reopen its case after each side had rested. We affirm.

Appellant was arrested after a homeowner on Moorefield Road in Hidalgo County, Texas noticed him carrying things out of a neighbor's home. The witness confronted appellant, determined that appellant was burglarizing the home, and called police. When a police officer arrived, he investigated the scene and noticed that the home of Jerry

Hutchins appeared to have been burglarized. The officer questioned appellant, who had been detained and handcuffed during the investigation, about the burglary. Appellant admitted he took items from the home, and was arrested. Hutchins testified and identified the items in appellant's car as those taken from his home, and stated further that he had not given consent or authority for appellant to enter the home or take anything from it.

By his first point, appellant complains that the trial court committed reversible error when it refused to declare a mistrial after the prosecutor for the State made an improper and prejudicial remark during its closing argument. During closing argument, the prosecutor made the following argument:

> Well, what do you have? You have the direct testimony from Mr. Hutchins that he did not give away the VCR. That's all you have. You have that testimony and there's nothing to the contrary. They don't have to put on the case. But if they want you to believe there's a doubt they can put on something.

At this point, the defense objected and the court sustained their objection, then instructed the jury to disregard the comments of the prosecutor. Appellant moved for a mistrial, which the trial court declined to order.

Appellant contends the prosecutor improperly attempted to shift the burden of proof to the defense, and analogizes such improper burden-shifting to an improper comment on a defendant's refusal to testify which cannot be cured by the court's instruction. *See Johnson v. State*, 611 S.W.2d 649, 650–51 (Tex. Crim.App.1981). We disagree.

Viewed in its context, it is clear that the prosecutor was not attempting to shift the burden of proof. Indeed, he stated "they do not have to put on the case." Instead, his comment appeared to emphasize the State's position that the evidence was overwhelming as to appellant's guilt, and it was uncontroverted in all significant respects. Appellant's characterization of the comment as an im-

---

1. Tex Penal Code Ann. § 30.02 (Vernon 1994).

proper burden-shifting is therefore inaccurate.

▮▮▮▮ To the extent that the prosecutor's comment could be construed as an attempt to suggest to the jury that the defendant had any type of a burden of proof in the case, such argument was improper. *Ex parte Drinkert,* 821 S.W.2d 953 (Tex.Crim.App. 1991). However, the trial court sustained appellant's objection and instructed the jury to disregard the prosecutor's comment. Any potential harm is presumably cured by such instruction, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *Wilkerson v. State,* 881 S.W.2d 321, 327 (Tex.Crim.App.1994); *Burks v. State,* 876 S.W.2d 877 (Tex.Crim.App.1994); *Borrego v. State,* 800 S.W.2d 373, 377 (Tex.App.—Corpus Christi 1990, pet. ref'd). The comment was not incurable. Point of error one is overruled.

▮▮▮ By his second point of error, appellant complains that the trial court committed reversible error when it allowed the State to introduce photographs of items seized from appellant's vehicle into evidence because they were the "fruits of an illegal arrest."

During the State's case in chief, it first called Raul Alvarez. Alvarez testified that he lived on Moorefield Road and had observed a suspicious vehicle on the street in front of a neighbor's house. The car had its hazard lights on. Alvarez approached a man carrying things from the house, whom he identified as appellant. Alvarez asked what he was doing, and appellant said the family that lived in the house had given him the VCR he was carrying. Alvarez then suggested they go speak with the family, and appellant responded that they were not there. After Alvarez saw appellant put the VCR into his car, he telephoned the police.

The State next called Hidalgo County Patrol Sergeant Baltazar Flores. Flores testified that he had been patrolling the area and was dispatched to Moorefield Road, where a burglary in progress had been reported. Flores testified that as he drove to the site of the reported burglary, he observed a man (Alvarez) standing in a front yard, holding a

cellular phone, and pointing at another man who was standing beside a vehicle parked on the road. Flores pulled up alongside the man beside the car, who he identified as the appellant. Flores testified that "since the witness was pointing to him, for my safety as well as for others," he "subdued" appellant. Flores said that by the term "subdued," he meant that he handcuffed appellant and placed him in the patrol car. Flores testified that he did not consider appellant to be under arrest, but merely to have been detained until he finished his investigation.

The State next presented three photographs of various items sitting atop appellant's station wagon. After Flores identified the photographs, the State offered the photographs into evidence, at which point counsel for appellant objected as follows:

> Your Honor, at this time, we would object. We would object on the basis that these are fruits of a poisonous tree, an illegal arrest and detention of our client, and on that basis we would ask that they not be admitted into evidence. That we would object to it under the Fourth Amendment of the United States Constitution. We object to it under Texas Constitution and, I believe, it's 38.23 Code of Criminal Procedure. They are illegally obtained and we will object to them on those grounds and ask that they not be admitted into evidence.

The trial court asked Flores whether he recognized the photographs. Flores did, because he took the photographs at the crime scene. The court then asked whether the objects in the photograph were in plain view, to which the officer answered affirmatively. No further argument was raised by appellant, and the court overruled the objection. The State continued questioning Flores, who indicated that he had read appellant his rights when he first handcuffed him. Flores indicated he then saw some items in the car in plain view. When the State offered seven more photographs of the items into evidence, the defense repeated its objections, which were again overruled.

▮▮▮ At the time the objections were made, the only aspect of the investigation which was apparently at issue was whether appel-

lant had been illegally arrested when he was first handcuffed and placed in the police car. As we will elaborate upon in our discussion of appellant's third point of error, there was some question as to the reasonableness of Flores's decision to handcuff appellant when he first arrived at the scene. Ordinarily, handcuffing a suspect without probable cause for believing the suspect has committed or is committing a crime is considered unreasonable, although it may be justified in limited circumstances as an acceptable aspect of a temporary investigation. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997).

We need not discuss the propriety of Flores's action in handcuffing in order to address appellant's point regarding the admission of the evidence, however, because an independent basis for admitting the photographs was presented without objection from appellant—the plain view doctrine. The fact of an illegal arrest is not necessarily dispositive on the issue of whether evidence seized during the course of an investigation may be admitted. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963) ("Not all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police."). The more apt question is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.*

The trial court specifically inquired as to whether the items in the photograph were in "plain view" of the officer. The plain view doctrine provides that, if an officer perceives a suspicious object while lawfully engaged in an activity in a particular place, that officer may immediately seize the object. *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct.

1535, 1541–42, 75 L.Ed.2d 502 (1983); *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *Clark v. State*, 548 S.W.2d 888, 889 (Tex.Crim.App. 1977). Such seizure is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. *Arizona v. Hicks*, 480 U.S. 321, 326–37, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987); *see also Brown*, 460 U.S. at 741, 103 S.Ct. at 1542–43 (citing *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). Despite appellant's assertion to the contrary, it need not be "immediately apparent" that the items are of an incriminatory nature. *Brown*, 460 U.S. at 741, 103 S.Ct. 1535.

The photographs in question consist of an external view of the items inside of appellant's car, a photograph of the car with its door open, an internal photograph of the items in the car, four photographs of the items paced upon the hood of the car, and a photograph of the back door of the house which was burglarized. Appellant does not specifically dispute that the officer had a right to conduct a temporary detention to preserve the status quo while he investigated the scene.[2] Nor did appellant challenge the officer's assertions at trial that the items in the photograph were in plain view. The record demonstrates that the automobile in question was parked on the street. An officer was able to view the confiscated evidence without opening the door or touching the car. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from the outside by either an inquisitive passerby or a diligent police officer. *Brown*, 460 U.S. at 740, 103 S.Ct. at 1542. The photographs of the house and the external view of the automobile do not even implicate any seizures, and there was no basis for excluding them.[3]

**2.** *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

**3.** The Supreme Court wrote in *Texas v. Brown*, 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983),

It is important to distinguish "plain view" ... to justify seizure of an object, from an officer's

mere observation of an item left in plain view. Whereas the latter generally involves no fourth Amendment search, [citations omitted], the former generally does implicate the Amendment's limitations upon seizures of personal property. The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable

The photographs taken from the inside of the car, and those of the items removed from the car do implicate seizure analysis, however, because one must presume that Flores opened the door and extracted the items before he photographed them. *See Arizona v. Hicks,* 480 U.S. at 324–25, 107 S.Ct. at 1152–53 (officers actions in "moving" object implicates Fourth Amendment, whereas "looking" at it does not). It was unclear what amount of time had elapsed before the photographs were taken. Flores would have been within the law in interviewing the witness, searching the premises of the alleged burglary, and peering into appellant's car regardless of whether appellant was detained or under arrest. The record indicates that he did all of these things before the items in the car were ever photographed or seized. Any suspicions Flores had regarding the items quickly escalated to probable cause to believe the items were stolen, thereby justifying their seizure.

We conclude that the plain view doctrine served as an independent basis for the seizure of the items in appellant's car, sufficiently attenuated from any purported arrest. If appellant had any objection to this separate basis for introducing the photographs, he could have raised them at the time. He did not, and therefore is estopped from presenting them for the first time on appeal.

■ Appellant's contention that the photographs should have been suppressed pursuant to article 38.23 of the code of criminal procedure is likewise misplaced. Article 38.23 states unequivocally that "no evidence obtained by an officer . . . in violation of any provisions of the constitution or laws of the State of Texas, or of the Constitution or laws of the Untied States of America, shall be admitted in evidence against the accused on the trial of any criminal case." It is also true that there is no inevitable discovery exception to the statutory exclusionary rule. *State v. Daugherty,* 931 S.W.2d 268, 269–70 (Tex. Crim.App.1996); *Garcia v. State,* 829 S.W.2d

796, 798–99 (Tex.Crim.App.1992). However, article 38.23 is not invoked unless the evidence seized is obtained in violation of the law. If the seizure of the evidence in question is sufficiently attenuated from the officer's violation of the law, it is not considered to have been obtained from the violation. *Johnson v. State,* 871 S.W.2d 744 (Tex.Crim. App.1994). Because we have held that the evidence was properly seized based upon the plain view doctrine, there is no basis for excluding it. Point of error two is overruled.

By his third point, appellant contends that a statement which was admitted into evidence was the product of an illegal arrest, and therefore should not have been admitted. Appellant's statement was made after he had been placed in handcuffs. After Flores investigated the scene and concluded that a burglary had been committed, Flores returned to the patrol car and asked appellant if he (appellant) wanted to speak with Flores. According to Flores, appellant responded "yes." The defense objected on the grounds that any statements made by appellant were involuntary, and also that they were the fruit of an illegal arrest. The trial court conducted a lengthy *Jackson v. Denno* [4] hearing, after which it concluded that appellant's statements were voluntary.

The State again asked Flores what questions were posed to appellant. Flores said he asked appellant what he had taken from the house. Defense counsel objected on the ground that any response by appellant was involuntary and the product of a custodial interrogation, and was also the product of an illegal arrest and therefore should be suppressed under articles 38.22 and 38.23 of the code of criminal procedure. The trial court overruled defense objections. Flores then testified that appellant responded to the question posed with "It's all in the car." It was at that point, according to Flores's testimony, that he placed appellant under arrest.

■ A trial court's ruling on a motion to suppress is generally reviewed for abuse of discretion. *Villarreal v. State,* 935 S.W.2d

---

suspicion of illegal activity. In turn, these levels of suspicion may, in some cases [citation omitted], justify police conduct affording them access to a particular item.

4. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

134, 138 (Tex.Crim.App.1996); *Long v. State,* 823 S.W.2d 259, 277 (Tex.Crim.App.1991). The trial court abuses its discretion only if it acts arbitrarily and unreasonably, without reference to any guiding rules or principles. *Breeding v. State,* 809 S.W.2d 661, 663 (Tex. App.—Amarillo 1991, pet. ref'd). Although we defer to the trial court's findings of historical facts based on credibility and demeanor, we apply a de novo review to a trial court's determination of reasonable suspicion and probable cause. *Ornelas v. United States,* 517 U.S. 690, 695–700, 116 S.Ct. 1657, 1661–63, 134 L.Ed.2d 911 (1996); *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). This is because the determination of reasonable suspicion and probable cause requires the application of law to facts. *Ornelas,* 517 U.S. at 695–98, 116 S.Ct. at 1661–62; *see Guzman,* 955 S.W.2d at 87.

Resolution of appellant's point requires consideration of two related, yet distinct issues: (1) whether appellant's statement was voluntary, and (2) whether it was sufficiently attenuated from the illegal arrest so as to be considered admissible under either 38.22 or 38.23. The court of criminal appeals has explained that considerations applicable to voluntariness are almost invariably relevant to attenuation of taint analysis as well. *See Miller v. State,* 736 S.W.2d 643, 649–51 (Tex. Crim.App.1987). In *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992), the court wrote:

> When complaint is made on appeal that evidence should have been suppressed because it is the product of an unattenuated official illegality, the appellate court may not conclude its analysis with a discussion of voluntary consent alone, but must specifically evaluate the impact of constitutionally prescribed factors upon the degree to which exploitation of the illegality was attenuated by such consent or by other intervening events and circumstances. [citations omitted]. On the other hand, consideration of these factors, although relevant, may not be constitutionally required under a pure voluntariness analysis. Consequently, one kind of inquiry is not necessarily dispositive of questions appropriate

to the other, in spite of considerable overlap.

*Arcila,* 834 S.W.2d at 359.

Viewing the facts adduced at the hearing in the light most favorable to the trial court's ruling, they showed the following: upon his arrival at the scene of the reported burglary in progress, Flores noticed a man, later identified as Alvarez, pointing to a man on the street, later identified as appellant. Appellant and Flores immediately recognized each other, as Flores had worked in the county jail and appellant had been an inmate. Flores asked appellant to place his hands on the car, but appellant did not comply. Flores then turned appellant around, handcuffed him, read appellant his rights, and placed him in the patrol car. At that point, Flores did not consider appellant to be under arrest; rather, he was detained so that Flores could investigate the scene. In his experience, handcuffing appellant was necessary to protect his safety and that of others because often times there are multiple suspects involved in burglaries, and they tend to become agitated when confronted by police.

According to his testimony, Flores then proceeded to investigate the scene. He spoke with Flores, then went to the house where the reported burglary occurred. He noticed the back door ajar, and after entering the house, noticed loose television wires. It appeared to him that an item had been removed from atop the television, probably a VCR. Flores then went back outside and asked appellant if he wanted to answer any questions. Flores indicated that he did not question appellant until after he had confirmed that appellant understood his right to remain silent. It was at that point that appellant reportedly indicated the items were in the car.

### ILLEGAL ARREST?

We first address whether, under the circumstances, appellant was illegally arrested when Flores arrived at the scene and handcuffed him. The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated." U.S. CONST. amend. IV. The Texas Constitution provides that "the people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." TEX. CONST. art. I § 9. Texas courts follow federal standards with respect to temporary investigative stops and arrests and have found no reason to apply a more stringent standard under the Texas Constitution. *Johnson v. State*, 912 S.W.2d 227, 231–34 (Tex.Crim.App.1995). Article 38.23(a) of the Texas Code of Criminal Procedure codifies these constitutional provisions and states that "no evidence obtained by an officer or other person in violation of any provisions of the constitution or laws of the State of Texas, or of the constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 1979 & Vernon Supp.1998).

In determining whether a "seizure" is unreasonable, courts must remain cognizant that there are different types of seizures, the reasonableness of which depends upon the degree of suspicion accompanying them. To be clear, seizures are typically categorized as either "temporary investigative detentions," or "arrests," depending on the circumstances. *Francis v. State*, 896 S.W.2d 406, 408–10 (Tex.App.—Houston 1st Dist.1995), *pet. dism'd, improvidently granted*, 922 S.W.2d 176 (Tex.Crim.App.1996). The State maintains that appellant was not under arrest when handcuffed, while appellant maintains he was.

To temporarily detain a person for investigative purposes, an officer need only have "specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts would reasonably warrant such intrusion on appellant's freedom." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App.1996). For a temporary investigative detention to be valid, factors must be present: (1) an unusual activity must be occurring or have occurred, (2) the accused must be connected with the suspicious activity, and (3) the suspicious activity

must be connected with crime. *Davis v. State*, 829 S.W.2d 218, 222 n. 2 (Tex.Crim. App.1992).

An arrest, however, must be based upon "probable cause." *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991); *see also Earley v. State*, 635 S.W.2d 528, 531 (Tex.Crim.App.1982) (the legislative prescription in article 14.04 of the code of criminal procedure of what must be "shown by satisfactory proof" is the legal equivalent of constitutional probable cause). The constitutional test for probable cause is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Amores*, 816 S.W.2d at 413. The determination hinges on "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *See Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982) (opinion on rehearing). It requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Guzman*, 955 S.W.2d at 87; *see also Brinegar v. United States*, 338 U.S. 160, 174–75, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (probable cause is more than "bare suspicion").

The court of criminal appeals has explained the distinction between the two types of seizures as follows:

For purposes of constitutional analysis, both investigative detentions and arrests are seizures. They are either reasonable because a trial or reviewing court finds they are based on a constitutionally adequate reasonable suspicion or on constitutionally adequate probable cause, respectively, or they are unreasonable. They both represent a seizure of a citizen by law enforcement officers. The differences between the two are based on the degree of intrusion involved in both seizures, and the

different legal justifications required of each.

*Johnson,* 912 S.W.2d at 235.

 Distinguishing the two types of seizures can be difficult, particularly because the distinction rests on fact-specific inquiry rather than clearly delineated criteria. Contributing to the difficulty is the longstanding definition of arrest drafted by the Texas legislature: "a person is arrested when he has been actually placed under restraint or taken into custody" by an officer. TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977). Many courts have held that the act of handcuffing is tantamount to an arrest. *See, e.g., Pickens v. State,* 712 S.W.2d 560, 561–62 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), *overruled on other grounds,* 956 S.W.2d 33 (Tex.Crim.App.1997); *Carey v. State,* 695 S.W.2d 306, 311 (Tex.App.—Amarillo 1985, pet. ref'd). Despite the apparent simplicity of this definition, however, the court of criminal appeals has held that the act of handcuffing a suspect is not dispositive of the issue of whether an arrest has occurred. *See, e.g., Rhodes,* 945 S.W.2d at 117–18. There is no bright-line test for determining whether handcuffing is tantamount to an arrest. *Id.* at 118. Indeed, article 15.22, which was drafted before the Supreme Court handed down *Terry v. Ohio,* has been called "legislatively obsolete." *See Francis,* 922 S.W.2d at 179 n. 4 (Baird, J., concurring and dissenting). Its principal failing is that it does not distinguish between temporary investigative detentions and arrests.

 With these distinctions in mind, we analyze whether the incidental force used by Flores was excessive and unreasonable, amounting to an illegal arrest, or whether it was an acceptable aspect of an investigative detention. We believe the most prudent approach towards determining whether a seizure is legal is to remain focused on the term "reasonable," and determine whether, under a totality of the circumstances, the degree of force exercised amounted to an arrest. *See, e.g., Hoag v. State,* 728 S.W.2d 375, 379 (Tex. Crim.App.1987). An officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Rhodes,* 945 S.W.2d at 117. Reasonableness is measured by balancing the nature of the intrusion into an individual's Fourth Amendment interests against the public interest or legitimate government interest at stake. *Vernonia School Dist. v. Acton,* 515 U.S. 646, 651–53, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995).

 The issue presented in this case is whether it is reasonable to handcuff a suspect at the commencement of, or within the course of, an investigative detention, before probable cause for an arrest has actually been established. Ordinarily, handcuffing a suspect is not proper, but may be resorted to in special circumstances, such as when necessary to thwart the suspect's attempt "to frustrate further inquiry." *Rhodes,* 945 S.W.2d at 117; *see also* 4 LaFAVE, SEARCH AND SEIZURE, Sec. 9.2(d), 36–38 (1996). It is only in "rare" or exceptional circumstances that such actions by a police officer may be considered a reasonable part of an investigative detention. The officer's testimony is one factor to be considered, in determining whether an arrest has taken place. *Rhodes,* 945 S.W.2d at 117 (citing *Amores,* 816 S.W.2d at 412). Other critical factors are whether an investigation accompanied the detention, *compare Salazar v. State,* 805 S.W.2d 538, 540 (Tex.App.—Fort Worth 1991, pet. ref'd) (handcuffing the detainee was, under the circumstances, a reasonable corollary to the investigative detention and therefore did not amount to an arrest), *with Burkes v. State,* 830 S.W.2d 922, 925 (Tex. Crim.App.1991) (where no investigative questioning preceded officer's conduct in requiring the defendant to lie down and handcuffing him, the detention rose to the level of an arrest and probable cause to conduct a pat-down must be considered in that light); *see also* Justice Meyers's concurring opinion in *Rhodes,* 945 S.W.2d at 119–20 (arguing that the presence or absence of an investigation contemporaneous to physical restraint should be a dispositive factor in the analysis), whether the officer's impressions were conveyed to the suspect, and the length of the stop. *See United States v. Smith,* 3 F.3d 1088,1095 (7th Cir.1993). Courts may also

consider the behavior and number of the suspects and the imminent danger of the locale.

We have reviewed numerous cases where handcuffing a suspect with less than probable cause for arrest has been considered reasonable. When a single officer confronts multiple suspects who make furtive gestures, disobey instructions, or attempt to flee, that officer may be justified in handcuffing the suspects, then proceeding to conduct a *Terry* investigation. *See, e.g., Rhodes,* 945 S.W.2d at 117–18 (officer handcuffing suspects after high-speed chase was reasonable given attempted flight, darkness, fact that it was a high crime location, officer left alone with one suspect while his partner chased the other); *Mays v. State,* 726 S.W.2d 937, 942 (Tex.Crim.App.1986) (lone police officer responding to burglary in progress was justified in handcuffing two suspects at scene due to nature of call, their behavior, and the fact that officer was outnumbered). *See also Smith,* 3 F.3d at 1094 (handcuffing not unreasonable in those rare circumstances where officer does not believe investigative stop could be conducted safely without it); *United States v. Sanders,* 994 F.2d 200, 206 (5th Cir.), *cert. denied,* 510 U.S. 955, 114 S.Ct. 408, 126 L.Ed.2d 355 (1993) (handcuffing reasonable where suspect made furtive gestures and attempted to flee when confronted by investigating officer); *United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir.1993) (immediately handcuffing suspects reasonable where police told suspects were planning to kill someone and were acting violently, and officers observed suspects "pounding fists" upon their arrival); *United States v. Glenna,* 878 F.2d 967 (7th Cir.1989) (fact that suspect kept putting hand in pocket, which officer discovered contained a loaded handgun magazine, justified handcuffing during investigation); *United States v. Thompson,* 597 F.2d 187, 190 (9th Cir.1979) (suspect's repeatedly putting hands in pockets during questioning justified handcuffs during course of investigation); *United States v. Purry,* 545 F.2d 217 (D.C.Cir.1976) (although no concern for officer safety was present, burglary suspect's attempted flight when confronted justified handcuffing).

■ The reasonableness of a particular officer's actions is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight, and allowances must be made for the fact that officers must make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes v. State,* 913 S.W.2d 242 (Tex.App.—Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim.App. 1997). Flores immediately recognized appellant as a former jail inmate. Appellant did not comply with Flores's initial request to place his hands upon the car. At that point in time, Flores was the sole officer at the scene, and did not know whether any other suspects were present when he decided to handcuff appellant. Flores explained that he felt it was necessary to restrain appellant "for my protection and the protection of others." Flores immediately conducted an investigation of the scene, interviewed the witness, and questioned appellant. An investigating officer does not necessarily need to ask questions of a suspect before restraining him,[5] so long as some investigation coincides with the restraint.

■ Flores's actions hang at the precipice of an officer's authority in the conduct of an investigative detention. We believe the trial court was presented with enough information to have reasonably concluded that appellant was not under arrest when he was first handcuffed, but was merely restrained so that Flores could safely investigate the scene while preserving the status quo. That is not to say that the trial court could not have reasonably reached a different conclusion under slightly different facts. We must be careful to limit our consideration to the facts presented in each case. Without a reasonable explanation from the officer as to why, in his view, it was necessary to handcuff a suspect before asking any questions or doing any investigation, that officer has not provided the court with any reason to conclude that any exceptional circumstances ex-

---

**5.** *See* Justice Meyers's concurrence in *Rhodes,* 945 S.W.2d at 120 n. 3.

isted to treat his action as anything other than an arrest. Were we to hold otherwise, we would effectively be saying that whenever a single officer arrives at the scene of any suspected offense, he may handcuff any and all suspects first, then ask questions later. Absent exceptional circumstances, such procedures are not reasonable, and this Court would not condone such *pro forma* actions. Nevertheless, after applying the law to the facts adduced at the time the objections were made, we conclude that Flores's actions were not unreasonable under the United States and Texas Constitutions.

### INVOLUNTARY STATEMENT?

 There is no question but that appellant was in custody at the time he was questioned; he had been handcuffed and placed in the patrol car for up to thirty minutes while Flores investigated the scene. *See Stansbury v. California*, 511 U.S. 318, 320–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293 (1994); *Dowthitt*, 931 S.W.2d at 254 (a person is in custody if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest). The more pertinent question is whether appellant was coerced to give a statement. A statement is "involuntary," for due process purposes, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995); *Smith*, 779 S.W.2d at 427.

 As previously mentioned, the trial court properly conducted a hearing to determine whether appellant's statements were voluntary. At such hearing, the trial court is the sole judge of the weight and credibility of the evidence, and its finding may not be disturbed on appeal absent a clear abuse of discretion. *Alvarado*, 912 S.W.2d at 211. The burden of proof at the hearing on admissibility is on the prosecution, which must prove by a preponderance of the evidence that the defendant's statement was given voluntarily. *Colorado v. Connelly*, 479 U.S. 157, 167–69, 107 S.Ct. 515, 522–23, 93

L.Ed.2d 473 (1986); *Tuttle v. State*, 1997 WL 685979, *8, —— S.W.2d ——, —— (Tex.Crim. App. Nov.5, 1997).

Flores indicated that he did not force appellant to answer any questions, but asked whether appellant wanted to cooperate. Flores testified that he read each of appellant's Miranda rights, and the appellant acknowledged he understood his rights, but chose instead to waive them and answer Flores's question. Appellant denied that he was ever asked to answer any questions, and that he ever made a statement. According to the testimony at the hearing, Flores asked appellant whether he burglarized the house, to which appellant responded "yes." Flores asked where the items taken from the house were, to which appellant responded "it's all in the car." Only the latter statement was admitted before the jury.

 We cannot say that the trial court erred in concluding the statement was voluntarily given, based on the testimony of Flores. However, appellant raises a separate challenge to the admissibility of the statement; it was neither written down nor recorded, which are prerequisites under article 38.22 §§ 1–3 (Vernon 1979). The State maintained, however, that the statement should be admitted under subsection 3(c) of article 38.22, which permits the admission of an oral statement of an accused made as a result of a custodial interrogation may be admitted if it "contains facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." TEX. CODE CRIM. PROC. ANN. 38.22 § 3(c) (Vernon 1979). The term "found to be true means facts about which the police were unaware at the time of the confession [which] are later, after the confession found to be true." *Dansby v. State*, 931 S.W.2d 297, 298–99 (Tex.Crim.App.1996) (citing *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App.1990)).

According to Flores, after he put appellant in the patrol car, he looked into appellant's car and saw a VCR which he assumed was stolen. Flores then went to the house where the reported burglary occurred, and conclud-

ed that it had been broken into.[6] Upon questioning from the State, however, Flores admitted that although he suspected the items in the car were stolen, he did not know what specifically had been stolen from the house he investigated until appellant made his statement. When he asked appellant where the items he had taken from the house were, appellant made a statement fitting within the scope of article 38.22 § 3; he told the officer the items he had taken were all in the car. It was not until appellant's comment that Flores confirmed his suspicions that the items in the car had been taken from the house. Appellant's statement was later found to be true, as Hutchins identified the items found inside the car as his own, which had been taken without his permission. The trial court was entitled to conclude that the statement fit within the scope of article 38.22 § 3(c).

Accordingly, we cannot say the trial court abused its discretion in concluding the statement was voluntarily given and admitting it under article 38.22 § 3(c). Point of error three is overruled.

▮ Finally, by his fourth point, appellant contends that the trial court reversibly erred when it did not allow appellant to reopen his case after it had already rested, but before the charge was read to the jury. Appellant explains that the code of criminal procedure allows a court to receive evidence at any time in the interest of justice, and denying such a request may be reversible error when a witness is available and allowing such testimony will not inconvenience the court. See TEX.CODE CRIM. PROC. ANN. art. 36.02 (Vernon 1989).

At the conclusion of the evidence, defense counsel explained to the court that his client wanted the case "reopened" because his client believed that they ought to recall a couple of witnesses. Defense counsel further stated "[a] primary witness would be Baltazar Flores and I believe the first witness' name was Salazar concerning some inconsistent statements." The court denied this request.

▮ The decision of whether to reopen a case lies within the sound discretion of the trial court. See Cain v. State, 666 S.W.2d 109, 111 (Tex.Crim.App.1984); Cuba v. State, 905 S.W.2d 729, 733 (Tex.App.—Texarkana 1995, no pet.). A trial court must reopen a case if the following conditions are met: (1) the witness is present and ready to testify, (2) the request to reopen has been made before the charge was read to the jury and final arguments were made, and (3) the judge had some indication of what the testimony would be and is satisfied that the testimony is material and bears directly on the main issues in the case. Phillips v. State, 878 S.W.2d 617, 619 (Tex.App.—Corpus Christi 1994, no pet.); Wilson v. State, 857 S.W.2d 90, 98 (Tex.App.—Corpus Christi 1993, pet. ref'd). The burden is on the defendant to show that the proposed testimony would have materially changed the case in his favor. Yee v. State, 790 S.W.2d 361, 362 (White, J., dissenting) (Tex.App.—Houston [14th Dist.] 1990), pet. dism'd, 815 S.W.2d 691 (Tex.Crim.App.1991); Gray v. State, 797 S.W.2d 157, 160 (Tex.App.—Houston [14th Dist.]1990, no pet.).

In the instant case, there was no indication by the defense with regard to the nature of the "inconsistencies," what further questioning would focus on, or what the defense would demonstrate through such questioning. Because the defense did not satisfy the third prong of the test for demonstrating an abuse of discretion we set out in Wilson, he has not adequately preserved the point for consideration on appeal. Point of error four is overruled.

The judgment of the trial court is affirmed.

SEERDEN, C.J., issues concurring opinion.

SEERDEN, Chief Justice, concurring.

I concur in the majority's disposition of this case.

However, without agreeing or disagreeing with the majority's discussion, reasoning or holdings with respect to points of error two and three, I would simply hold that even if the matters complained of were errors, without deciding if there were errors, they were

---

6. Appellant's car was parked a few houses away from the site of the burglary.

harmless. The other evidence of appellant's guilt was overwhelming without the photographs or appellant's statement.

Alvarez testified that he witnessed appellant carrying items from the home of his neighbor to his [appellant's] car, parked in plain view on a public street. Hutchins, the homeowner, testified and identified the items in appellant's car as those taken from his home, and stated further that he had not given consent or authority for appellant to enter the home or take any such items. The responding officer testified that he observed the stolen items, including a VCR, in appellant's automobile, and that, after investigating the house where the reported burglary occurred, he noticed the back door ajar and loose television wires.

From this evidence alone, I believe we can properly determine, beyond a reasonable doubt, that any error in admitting the photographs and appellant's statement did not contribute to appellant's conviction, and as such, must be considered harmless. Tex. R.App.P. 44.1(a); *Brown v. State*, 960 S.W.2d 265, 271–72 (Tex.App.–Corpus Christi 1997, no pet. h.) (wrongful admission of appellant's statement deemed harmless).