NO. 07-07-0446-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 28, 2008
______________________________

IN THE ESTATE OF RUSSELL E. WOMACK, DECEASED
_________________________________

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2006-771,633; HONORABLE PAULA LANEHART, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
OPINION
          Appellants, Barbara Holladay, Richard H. Byrne, Michael V. Byrne, and James E.
Byrne, Jr. (collectively “Byrne”), appeal from a judgment of the County Court at Law #3 of
Lubbock County, Texas, construing the will of Russell E. Womack, deceased. Through six
issues, Byrne attacks the legal determination that the will of the deceased intended a class
gift to “nieces and nephews” of Russell and his deceased wife, Beverly; the legal and
factual sufficiency of the evidence to support the judgment of the trial court and certain
specified findings of fact; and the trial court’s determination that Byrne could not object to
the inclusion of Deah’dra Anne Cummings as a distributee. We affirm.
 
Factual and Procedural Background
           Russell E. Womack was a successful businessman who had accumulated a
sizeable estate by the time of his death. He was married to Beverly Womack, who
predeceased him. Russell and Beverly did not have children of their own, however, their
respective siblings did have children. As a result, Russell wrote a holographic will that left
his entire estate to his and Beverly’s nieces and nephews. 
          The issue of the Womack estate was brought before the trial court as a “Combined
Application For Identification Of Distributees, For Probate Of Will, For Appointment Of
Independent Executor, And For Waiver Of Bond.” Within this document was a request that
the trial court determine the identities of the class of living nieces and nephews, as
designated by the Womack will. After the application was filed, two of the purported
distributees, Debbie Cheadle and Camille Sawaya,


 filed a limited objection to the
application on file. The limited objection was directed at the inclusion of Deah’dra Anne
Cummings as a distributee of the class gift to the Womack’s nieces and nephews. 
Subsequently, Nancy Higginson, Arthur Cheadle, Edward Cheadle, Raeanne Martin and
Wayne Carson joined in filing objections to the inclusion of Deah’dra Anne Cummings as
a distributee under the will. Ultimately, all of the nieces and nephews claiming through
Beverly Womack filed objections to the inclusion of Deah’dra Anne Cummings as a
distributee. Appellee, Deah’dra Anne Cummings, will be referred to as Cummings. None
of the nieces and nephews of Russell filed objections, however, those are the appellants
in this appeal. 
          The will was admitted to probate on May 10, 2006. Pursuant to a request by the
executor of the Womack estate, the trial court set a pre-hearing conference for August 4,
2006, at which time the attorneys representing the various parties were to discuss the
procedures to be used to ascertain the identification of the nieces and nephews of Russell
and Beverly Womack. Following the August 4, 2006 hearing, the trial court set a hearing
for what was designated “the official display of documents” for September 14, 2006. The
record demonstrates that all of the parties present before this Court were given notice of
the September 14th hearing. The reporter’s record of that hearing identifies the receipt by
the trial court of birth certificates from all of the parties before this Court, specifically to
include Cummings. The record further reflects that, at the close of the September 14th
hearing, the trial court instructed the attorney for the executor of the estate to send a letter
to all of the nieces and nephews advising that any objections to the birth certificate of
Cummings, a copy of which was enclosed, or any other proposed distributee must be filed
with the County Clerk by October 11, 2006. The final matter in the letter sent to all parties
was the setting of a “status conference” for October 22, 2006, at which the trial court was
to consider calendaring deadlines for discovery, mediation, and other pre-trial matters. 
          Subsequently, on August 2, 2007, the trial court entered a judgment declaring the
identity of the distributees under the Womack will. The court found that the will gave the
entire estate to a certain group of persons, those being the nieces and nephews of Russell
and Beverly Womack. The trial court found that the nieces and nephews of Russell were
James E. Byrne, Jr., Barbara Holladay, Michael V. Byrne, Richard H. Byrne, Wes Womack,
and Carolyn Victoria Cain. The trial court also found that the nieces and nephews of
Beverly were Nancy Higginson, Debbie Cheadle, Arthur Cheadle, Camille Sawaya, Wayne
Carson, and Raeanne Martin. The court further found, although there had been a dispute
regarding the status of Cummings, that dispute had been resolved by and between
Cummings and those parties who had filed an objection and that the objection had been
withdrawn. Further, the court found that no other party had filed an objection to
Cummings’s status as a niece and, therefore, Cummings was to receive an equal share
as a distributee under the Womack estate. The trial court proceeded to order the estate
distributed in 13 equal parts to all nieces and nephews found by the court, to include
Cummings. It is from this order that Byrne appeals. 
Class Gift
          Byrne’s first three issues all deal with the subject of whether the will of Russell made
a class gift to the nieces and nephews of Russell and Beverly.


 It is Byrne’s contention that
the will specifically provides that the estate is to be distributed to 12 distributees. We
disagree. 
          The original holographic will, dated April 9, 1999, stated, in relevant part:
I leave all of my estate to my nieces and nephews and to Beverly’s nieces
and nephews and to Basilio Coronado. The estate is to be divided into
fifteen (15) equal shares and each niece & nephew & Basilio Coronado are
to receive one (1) equal share.
 
Subsequently, on May 4, 2000, Russell wrote a holographic codicil to the will. In this
codicil, Russell stated:
          I Hereby delete from this will the following Persons:
                     1. Basilio Coronado
                     2. Finney Cheadle
                     3. Edward Cheadle
 
The codicil does not mention 12 equal shares nor does it otherwise try to limit the
interpretation of the original will. It simply deletes three individuals from the list of
distributees. 
          “It is a cardinal rule in the interpretation of wills that the intent of the testator is the
object to be sought. . . .” Hagood v. Hagood, 186 S.W. 220, 223 (Tex.Civ.App.–Fort Worth
1916, writ ref’d). No party to this case alleges that the will is ambiguous, therefore, the
proof of intent is to be taken from a reading of the will as drafted without aid to extraneous
sources. Id. at 224. In determining whether a gift is to be treated as a class gift or gifts to
specifically named devisees, we look at the words used to describe the takers of the gift. 
See generally Perry v. Hinshaw, 625 S.W.2d 751, 753 (Tex.App.–Fort Worth 1981, no
writ). A class gift is a gift to several persons answering the same description so that one
word describes them all. Id. The gift must be an aggregate sum to a body of persons
uncertain at the time of the gift. Id. (citing Hagood, 186 S.W. at 225). 
          In the case before the Court, the group originally consisted of the nieces and
nephews of Russell and Beverly and Basilio Coronado. By the codicil, Coronado and two
nephews were deleted. After the codicil, the aggregate sum to be given was the totality
of the estate of Russell and the several persons designated to take were the
aforementioned nieces and nephews. According to Byrne, this means that it is a specific
gift to those twelve nieces and nephews of Russell and Beverly in equal shares. However,
what makes this a class gift is that, at the time of execution of the will, the body of persons
the gift was made to was uncertain. This uncertainty was due to not knowing which of the
nieces and nephews would survive Russell. This uncertainty was not resolved until
Russell’s death. Sanderson v. First Nat’l Bank, 446 S.W.2d 720, 724-25
(Tex.Civ.App.–Dallas 1969, writ ref’d n.r.e.). The fact that the number “fifteen” was used
in the original will means only that Russell was attempting to ensure that all received equal
shares. Had he intended a gift to specific devisees, all Russell had to do was name them. 
As the will named one specific devisee, Basilio Coronado, we are guided by the fact that
Russell did not specifically name the nieces and nephews. See Benson v. Greenville Nat’l
Exchange Bank, 253 S.W.2d 918, 924 (Tex.Civ.App.–Texarkana 1953, writ ref’d n.r.e.). 
Accordingly, we overrule Byrne’s issues regarding the nature of the gift and find that the
will left the estate to a class of distributees, as found by the trial court.
Status of Deah’dra Anne Cummings
          Byrne’s next three issues are all related to the trial court’s determination that
Cummings was one of the nieces to be considered a distributee of the will of Russell. 
Byrne contends that the trial court erred in determining that they were barred from
objecting to Cummings’s status as a niece, there was only prima facie evidence of her
status, and there was a fact issue raised as to the type of adoption that brought Cummings
into the family. However, before we can address any of these issues, we must first
determine whether Byrne has preserved them for appellate review.
          First, it is axiomatic in Texas jurisprudence that a party wishing to complain about
a trial court’s ruling or procedure must object or, in some other proper manner, bring the
erroneous ruling or procedure to the attention of the trial court. See Tex. R. App. P.
33.1(a); Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999). This is so
that the trial court may have the opportunity to correct any errors without the necessity and
cost of an appeal. Odom v. Clark, 215 S.W.3d 571, 574 (Tex.App.–Tyler 2007, pet.
denied). The fact that there are multiple parties to the litigation in question does not lessen
the duty of a litigant to pursue its own objections or rulings. Beutel v. Dallas County Flood
Control Dist., No. 1, 916 S.W.2d 685, 694 (Tex.App.–Waco 1996, writ denied). 
          Under the operative facts of the case before the Court, Byrne never filed any
objection to the proof offered by Cummings nor did Byrne ever object to the procedure
followed by the trial court in attempting to ascertain who the members of the class of
devisees were. This failure to act leaves this Court with nothing to consider on appeal, as
the matter has been waived. Williamson v. New Times, Inc., 980 S.W.2d 706, 711
(Tex.App.–Fort Worth 1998, no pet.). Byrne attempts to alter this outcome by contending
that the other nieces and nephews did object to the proof offered by Cummings. However,
as discussed above, Byrne may not rely on another’s objection to preserve error that they
did not object to. Beutel, 916 S.W.2d at 694. 
          Byrne contends that the documentation filed by Cummings was nothing more than
prima facie evidence that she was a daughter of Victor Womack and, therefore, a niece
of Russell. Tindle v. Celebrezze, 210 F.Supp 912, 915 (S.D. Cal. 1962). Apparently,
Byrne’s theory is that this evidence is insufficient proof of her relationship with Russell. 
However, prima facie evidence is sufficient evidence to get a litigant to the trier of fact on
the issue presented. Coward v. Gateway Nat’l Bank, 525 S.W.2d 857, 859 (Tex. 1975). 
Inasmuch as this matter was tried to the court, there was then legally sufficient evidence
for the court to enter a judgment on this issue. City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). Likewise, in light of the fact that this is the only evidence before the trier
of fact on the issue of Cummings’s relationship to Russell, we cannot say that the judgment
of the trial court is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
          Next, Byrne attempts to defeat the judgment of the trial court by attacking the proof
of the adoption of Cummings as failing to meet the requirements for adoption by estoppel. 
However, this argument appears for the first time in Byrne’s appellate brief. There is
nothing in the record to indicate that this argument was ever presented to the trial court in
a timely manner. Therefore, the issue has been waived. See Tex. R. App. P. 33.1(a);
Williamson, 980 S.W.2d at 711. 
Conclusion
          Having overruled all of Byrne’s issues, we affirm the judgment of the trial court.
 
                                                                          Mackey K. Hancock

                                                                                     Justice



60;         Jose Velasquez testified, on the morning of the incident, he was preparing to eat
breakfast when he saw someone jump the Fulford’s back fence. Within seconds, he heard
a loud smashing sound, ran to the back door, looked into the Fulford’s yard, and observed
two Hispanic males standing near the Fulford residence. He yelled, “Hey!” The two men
then ran through Fulford’s back yard gate bordering the alley. Velasquez observed the two
men jump into an Expedition as it sped away. He told police the Expedition was a dark
color, burgundy with a dent in the back near the latch beneath the rear window, and there
were at least three persons in the Expedition. Later that day, he accompanied police
officers to another location where he identified the Expedition he observed speeding away
in the alley and Martinez Junior as one of the persons he observed running from the
Fulford house.
           Jeremy Winters, Crime Scene Officer, testified he had taken photographs of the
Fulford’s back door the day of the burglary. He testified there was a shoe print on the door.
In his opinion, the door was locked and either kicked in, or forced open by someone putting
their shoulder to the door, with sufficient force to remove a deadbolt from the door jamb. 
Al Erucliani, Fulford’s grandfather, testified the door “was just totally blown off” and
“everything was busted on the door.” 
            Sergeant Wims testified


 that, when inventoried, the SUV contained two crowbars,
a Colt air pistol, a prepaid mobile phone, walkie-talkies, black cotton gloves, and leather
gloves. The items located beneath the front seat and within the center console were, in
his training and experience, frequently used as weapons or criminal instruments, i.e.,
burglary tools. He also testified the Fulford residence, Porras residence, and the location
where the SUV was stopped were located near each other off University Avenue. He
estimated the locations were no more than ten to fifteen minutes apart traveling by car.
           Officer Sean Gonzales testified that, prior to April 24, he had observed the SUV in
the driveway at 2810 65th Street. He also observed Appellant and Martinez Junior near the
SUV at that location. Officer Billy Green testified that, when he spoke with Velasquez the
day of the burglary, Velasquez told him he observed two persons in the SUV’s backseat
as it sped away in the alley. Myrna Porras testified that the video camera and PlayStation
found in the SUV were her property. She also identified the jewelry found on Trevino’s
person as her own. Although Appellant objected to any evidence of the Porrras burglary
being admitted because the evidence was irrelevant under Rule 401 of the Texas Rules
of Evidence


 and impermissible character evidence under Rule 404(b), the trial court
overruled the objection. 
          At the conclusion of the evidence, the jury returned a verdict of guilty on the felony
offense of burglary of a habitation. Appellant pled true to the indictment’s two
enhancement paragraphs and the trial court sentenced Appellant to confinement for life. 
This appeal followed.
Discussion
           Appellant first asserts the evidence at trial was legally and factually insufficient to
convict him because the State failed to prove anyone entered the Fulford residence. He
next asserts the trial court erred by admitting into evidence Appellant’s unwarned
statement that he owned the SUV. He contends the trial court erred by admitting evidence
of the Porras burglary because the extraneous offense was irrelevant and more prejudicial
than probative. Finally, he contends the trial court erred by denying his motion to suppress
all evidence discovered as a result of the stop because the officers did not have probable
cause to arrest him when he was ordered out of the SUV, told to lie on the ground,
handcuffed, and placed in the backseat of a patrol car. 
          Logic dictates that we consider Appellant’s evidentiary issues before making a
determination whether the evidence is legally and factually sufficient. Accordingly, we will
address Appellant’s suppression (Issue 7) and evidentiary (Issues 3, 4, 5 and 6) issues
prior to his sufficiency issues (Issues 1 and 2). 
          I.        Motion To Suppress
          Appellant contends Detective Thompson effected an unlawful arrest by drawing his
service weapon, ordering him out of the SUV onto the ground, handcuffing him, and placing
him in the backseat of a patrol car because Detective Thompson lacked probable cause to
arrest him for burglary at that time. As a result, Appellant asserts the trial court should have
suppressed all evidence obtained by the officers after Appellant was stopped. 
          A.       Standard of Review
           A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); Hudson v. State, 247
S.W.3d 780, 783 (Tex.App.–Amarillo 2008, no pet.). In reviewing a trial court’s
determination of the reasonableness of a temporary investigative detention, appellate
courts use a bifurcated standard of review. Ford v. State, 158 S.W.3d 488, 493
(Tex.Crim.App. 2005). Almost total deference is given to a trial court’s determination of the
historical facts that the record supports especially when the trial court’s fact findings are
based on an evaluation of credibility and demeanor. St. George v. State, 237 S.W.3d 720,
725 (Tex.Crim.App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). 
The same level of deference is also afforded to a trial court’s ruling on application of law
to fact questions or mixed questions of law and fact if the resolution of those questions also 
turn on an evaluation of credibility and demeanor. Montanez v. State, 195 S.W.3d 101,
108-09 (Tex.Crim.App. 2006). However, if mixed questions of law and fact do not fall
within these categories, appellate courts may conduct a de novo review of the trial court’s
ruling. Guzman, 955 S.W.2d at 87. 
          When, as here, no findings of fact were requested nor filed, we view the evidence
in the light most favorable to the trial court’s ruling and assume the trial court made implicit
findings of fact supported by the record. See State v. Ross, 32 S.W.3d 853, 855-56
(Tex.Crim.App. 2000). If the trial court’s decision is correct on any theory of the law
applicable to the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404
(Tex.Crim.App. 2003); Ross, 32 S.W.3d at 855. Further, the legal question of whether the
totality of the circumstances is sufficient to support an officer’s reasonable suspicion
underlying an investigatory detention is reviewed de novo. See State v. Sheppard, 271
S.W.3d 281, 286-87 (Tex.Crim.App. 2008); Kothe v. State, 152 S.W.3d 54, 62-63
(Tex.Crim.App. 2004). 

          B.       Investigatory Detention v. Arrest
           The Fourth Amendment does not forbid all seizures, just unreasonable seizures;
Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Crim.App.), cert. denied, 522 U.S. 894, 118 S.Ct.
236, 139 L.Ed.2d 167 (1997), and, for purposes of constitutional analysis,


 both investigative
detentions and arrests are seizures of a citizen by law enforcement officers. Zayas v. State,
972 S.W.2d 779, 789 (Tex.App.–Corpus Christi 1998, pet. ref’d). The differences between
the two are the degrees of intrusion involved and the different legal justifications required of
each. Id. at 788-89.
          An investigative detention occurs when an officer lacks probable cause to arrest but
nonetheless possesses a reasonable suspicion: that is, the officer is able to point to
specific, articulable facts that, taken together with rational inferences from those facts,
reasonably warrants the detention. Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App.
1997). The articulable facts used by the officer must create some reasonable suspicion
that some activity out of the ordinary is occurring, or has occurred, some suggestion to
connect the detainee with the unusual activity, and some indication the unusual activity is
related to criminal activity. Id. (citing Meeks v. State, 653 S.W.2d 6, 12 (Tex.Crim.App.
1983 ). An arrest, on the other hand, is a greater restraint upon a person’s freedom to
leave or move than is a temporary detention which also restrains a person’s freedom. 
Shepard, 271 S.W.3d at 290. “If the degree of incapacitation appears more than
necessary to simply safeguard the officers and assure the suspect’s presence during a
period of investigation, this suggests the detention is an arrest.” Id. (quoting 40 George E.
Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 7.34, 462
(2d ed. 2001)). 
           The standard for distinguishing between an arrest and investigative detention is not
always clear because the distinction between these seizures rests on a fact-specific inquiry
rather than clearly delineated criteria. Johnson, 912 S.W.2d at 235. See Morris v. State, 50
S.W.3d 89, 94 (Tex.App.–Fort Worth 2001, no pet.); Josey v. State, 981 S.W.2d 831, 839
(Tex.App.–Houston [14th Dist.] 1998, pet. ref’d). By definition, “[a] person is arrested when he
has been actually placed under restraint or taken into custody by an officer or person
executing a warrant of arrest, or by an officer or person arresting without a warrant.” Tex.
Code Crim. Proc. Ann. art. 15.22 (Vernon 2005). This “restraint of liberty” standard, however,
is not adequate when distinguishing between an arrest and a detention because it is a
characteristic common to both. Frances v. State, 922 S.W.2d 176, 179 (Tex.Crim.App. 1996)
(J. Baird, concurring and dissenting). Whether a person is under arrest or subject to a
temporary investigative detention is a matter of degree and depends on the length of the
detention, the amount of force employed, and whether the officer actually conducts an
investigation. See Woods v. State, 970 S.W.2d 770, 775 (Tex.App.–Austin 1998, pet. ref’d). 
            During an investigative detention, an officer may employ the force necessary to effect
the reasonable goals of the detention: investigation, maintenance of the status quo, and
officer safety. Rhodes, 945 S.W.2d at 117. An officer may conduct a limited pat-down
search of the outer clothing for weapons during an investigative detention if the officer
fears for his safety or that of others. Josey, 981 S.W.2d at 840 (citing Davis v. State, 829
S.W.2d 218, 220 (Tex.Crim.App. 1992). Police officers are not required to use the “least
intrusive means” to verify or dispel their suspicions; United States v. Sokolow, 490 U.S. 1, 11,
109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), however, if the force utilized exceeds that reasonably
necessary to effect the goal of the stop, this force may transform an investigative detention
into a full-blown arrest. See State v. Moore, 25 S.W.3d 383, 386 (Tex.App.–Austin 2000, no
pet.). 
          Because an officer’s safety may be threatened by a passenger’s access to weapons
in an automobile, an officer may, as a matter of course, order a passenger lawfully stopped
to exit the vehicle; Rhodes, 945 S.W.2d at 118 (citing Pennsylvania v. Mimms, 434 U.S.
106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1997), and lie down on the ground pending completion
of the stop. See Smith v. State, 813 S.W.2d 599, 601 (Tex.App.–Houston [14th Dist.] 1991,
pet. ref’d) (investigative detention not transformed into an arrest when officer requested
that suspect exit his car, lie on the ground, and submit to a pat-down for officer safety
reasons). Furthermore, approaching a vehicle with a service weapon drawn does not
transform an investigative detention to an arrest. See Marsh v. State, 684 S.W.2d 676,
679 (Tex.Crim.App. 1984) (one officer approaching driver’s side of vehicle with a rifle
drawn, while another officer approached the passenger’s side of vehicle with his gun in
hand); Mount v. State, 217 S.W.3d 717, 726-27 (Tex.App.–Houston [14th Dist.] 2007, no
pet.). 
          Likewise, the use of handcuffs does not automatically convert an investigative
detention into an arrest; Shepard, 271 S.W.3d at 286, and there is no bright line rule that
handcuffing a suspect always constitutes an arrest; Rhodes, 945 S.W.2d at 116-18. 
Ordinarily handcuffing a suspect is more consistent with a full-blown arrest than it is with
an investigatory detention; Rhodes, 945 S.W.2d at 117, however, an officer may resort to
handcuffs without transforming an investigative detention into an arrest when he or she is
reasonably concerned for their safety or to maintain the status quo. Shepard, 271 S.W.3d
at 286 (handcuffed suspect during investigative detention for safety purposes and to
maintain status quo). See also Balentine, 71 S.W.3d at 771 (investigative detention did
not evolve into an arrest simply because appellant was escorted to patrol car and
handcuffed); Rhodes, 945 S.W.2d at 116-118 (appellant required to exit vehicle and
handcuffed); Mays v. State, 726 S.W.2d 937, 944 (Tex.Crim.App. 1986), cert. denied, 484
U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988) (frisked and handcuffed); Spight v.
State, 76 S.W.3d 761, 769-70 (Tex.App.–Houston [1st Dist.] 2002, no pet.) (handcuffed);
Goldberg v. State, 95 S.W.3d 345, 360 (Tex.App.–Houston [1st Dist.] 2002, pet. ref’d), cert.
denied, 540 U.S. 1190, 124 S.Ct. 1436, 158 L.Ed.2d 99 (2004) (handcuffed); Morris, 50
S.W.3d at 97-98 (removed from truck at gunpoint, placed on ground, and handcuffed
behind back); Josey, 981 S.W.2d at 839-40 (removed from car, patted-down, and
handcuffed); Nargi v. State, 895 S.W.2d 820, 823 (Tex.App.–Houston [14th Dist.] 1995),
pet. dism’d, improvidently granted, 922 S.W.2d 180 (Tex.Crim.App. 1996) (handcuffed);
Salazar v. State, 805 S.W.2d 538, 540 (Tex.App.–Fort Worth 1991, pet. ref’d) (removed
from car, hands on head, handcuffed, and patted-down).
           In the absence of a reasonable safety concern or need to maintain the status quo,
however, officers’ use of force to secure a suspect has been held to constitute an arrest.
See Amores v. State, 816 S.W.2d 407, 411-12 (Tex.Crim.App. 1991) (arrest where
handcuffed and no investigation performed). See also Burkes v. State, 830 S.W.2d at 925
(arrest where handcuffed and no investigation performed); Akins v. State, 202 S.W.3d 879,
888 (Tex.App.–Fort Worth 2006, pet. ref’d) (arrest where car boxed in, approached with
guns drawn, placed on ground, and handcuffed in absence of any necessity to maintain
officer safety or status quo); Moore, 25 S.W.3d at 386-87 (forgery suspect handcuffed in
absence of officer safety concern); Gordon v. State, 4 S.W.3d 32, 37 (Tex.App.–El Paso
1999, no pet.) (handcuffed and placed in backseat of patrol car solely to keep suspect out
of house while K-9 search performed); Rodriquez v. State, 975 S.W.2d 667, 675-77
(Tex.App.–Texarkana 1998, pet. ref’d) (boxed in car, removed suspect at gunpoint, had
him lie face down in parking lot, and performed no investigation); Flores v. State, 895
S.W.2d 435, 441 (Tex.App.–San Antonio 1995, no pet.) (removed from car at gunpoint
assuming spread-eagle position with hands on roof of car, officer testified suspect was not
free to leave, and no evidence of officer safety concerns). 
          In evaluating whether police conduct during an investigatory detention is reasonable,
common sense and ordinary human experience govern over rigid criteria. See Rhodes, 945
S.W.2d at 118. Whether a detention is an actual arrest or an investigative detention depends
on the reasonableness of the intrusion under all the facts. Id. Reasonableness is measured
by balancing the nature of the intrusion into an individual’s Fourth Amendment interests
against the public interest of legitimate government interest at stake; Zayas, 972 S.W.2d
at 789, and must be judged from the perspective of a reasonable officer at the scene,
rather than with the advantage of hindsight. Rhodes, 945 S.W.2d at 118. Allowances must
be made for the fact that officers must often make quick decisions under tense, uncertain, and
rapidly changing circumstances. Id. Additional factors to consider in determining the
reasonableness of the detention include the nature of the crime under investigation, the
degree of suspicion, the location of the stop, the time of day, the number of suspects present,
and the reaction of each suspect. See Akins v. State, 202 S.W.3d at 885 (citing Illinois v.
Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). The officer’s
opinion, while not determinative, is another factor to be considered. Amores, 816 S.W.2d at
413. Also very important is whether the officers actually conducted an investigation after
seizing the suspect. Burkes, 830 S.W.2d at 925; Moore, 25 S.W.3d at 386.
           Based on the information known to the officers investigating the burglary at the
Fulford residence, gathered by Sergeant Wims as a result of the Burglary Units ongoing
investigation of Martinez Junior and the observations of Detective Thompson, we find the
police acted within constitutional parameters of a reasonable investigative detention.


 See,
e.g., Gaines v. State, 888 S.W.2d 504, 509 (Tex.App.–El Paso 1994, no pet.) (finding
reasonable suspicion where officer saw two black males in a yellow Honda Civic on a
certain road after receiving a radio broadcast that two black males had committed a
burglary only minutes before, and fled in a late model yellow Honda Civic and were last
seen traveling south on the same road). Appellant‘s detention was reasonably related in
scope to the circumstances that justified the interference at the outset and lasted only so
long as was reasonably necessary to include, or exclude, him as a suspect. After obtaining
conflicting responses to questions related to their prior whereabouts and ownership of
property in the SUV, Appellant was detained until Fulford and Velasquez could be brought
to the scene.


 After Fulford and Velasquez placed the maroon SUV and Martinez Junior
at the Fulford residence at the time of the burglary, sufficient probable cause for arrest
existed, and Appellant was arrested. 
           We find the duration of the stop was reasonable and the officers diligently pursued
a means of investigation that was likely to dispel or confirm their suspicions as quickly as
possible. See Josey, 981 S.W.2d at 840-41 (ninety minute detention reasonable). The
SUV was stopped at approximately 12:30 p.m. By 1:23 p.m., the SUV and Martinez Junior
had been identified, and the three men arrested were in the process of being transported
to jail. During this period of time, the officers stopped Appellant, secured the scene,
identified the three men, questioned them regarding their whereabouts and ownership
interest in the SUV, concluded the identification process with Fulford and Velasquez,
arrested the three men, and inventoried the SUV’s contents.
            The force Detective Thompson employed during the detention was also reasonable
under the circumstances. Detective Thompson acted alone when he stopped an SUV
anticipated to contain at least three suspects in a felony burglary. The SUV’s windows were
tinted and stopped at its destination, a house with two windows facing the street–curtains
drawn. In his experience and training, he treated the stop as a “high risk felony stop” because
burglars are known to be armed. He was also concerned for his safety because he did not
know how many occupants were in the SUV, whether they had weapons, and whether there
were persons in the house that might also be armed. 
           After the SUV’s occupants were lying on the ground, Detective Thompson kept an eye
on the SUV and the house while Officer Calderon handcuffed Appellant and his two
passengers. The three were then patted-down after which Detective Thompson visually
swept the SUV from outside to assure there were no other passengers. As he did so, he
observed a video camera and gaming device in the front floorboard of the passenger side. 
When the scene was secured, Detective Thompson placed the three men in the backseats
of separate patrol cars for safety reasons and to maintain the status quo. He questioned them
regarding their identities, the SUV’s ownership, their whereabouts that day, where they lived,
and whether anyone was in the house. After receiving inconsistent explanations of their
whereabouts and the ownership of property on the floorboard, he ceased questioning and
awaited the arrival of Fulford and Velasquez. 
           We find Detective Thompson’s need for officer safety and to maintain the status quo
during the investigative detention reasonable. He was outnumbered at the outset and
attempting to initiate an investigation in an open area where he could easily be targeted from
the SUV’s tinted windows or the residence linked to the suspects. After he secured the area,
he conducted an investigation appropriate to an investigative detention. He held Appellant
only so long as was necessary to eliminate or verify him as a suspect. After Fulford and
Velasquez identified the SUV and Martinez Junior, the three men were arrested and the SUV
impounded. The entire detention took a little less than an hour. On this record, we find
Appellant’s detention was reasonable under the circumstances and the trial court did not
abuse its discretion in denying Appellant’s motion to suppress evidence due to an illegal
arrest. Appellant’s seventh issue pertaining to the trial court’s overruling of his motion to
suppress is overruled.

          II.       Unwarned Statement
          Appellant next asserts the trial court improperly permitted the State to offer 
evidence of his unwarned statement that he was the SUV’s owner because, at the time the
unwarned statement was made, he was in custody and the subject of a custodial
interrogation. He contends the trial court admitted the unwarned statement in violation of
the dictates of Miranda, supra, and article 38.22 of the Texas Code of Criminal Procedure.
           For purposes of analysis, we will assume without deciding error in the admission of
Appellant’s statement and proceed directly to the harm analysis. See Coleman v. State,
188 S.W.3d 708, 726 (Tex.App.–Tyler 2005, pet. ref’d) (assuming error in admission of
complained-of evidence and addressing appellant’s contention that error was harmful). 
Because a correct ruling in this instant is constitutionally required under Miranda; see
Dickerson v. United States, 530 U.S. 428, 439-40, 120 S.Ct. 2326, 147 L.Ed.2d 405
(2000), the error is constitutional error; Alford v. State, 22 S.W.3d 669, 673 (Tex.App.–Fort
Worth 2000, pet. ref’d), and Rule 44.2(a) is applicable. Tex. R. App. P. 44.2 (a). Thus, we
evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light
most favorable to the prosecution; Harris v. State, 790 S.W.2d 568, 586 (Tex.Crim.App.
1989); Kane v. State, 173 S.W.3d 589, 594 (Tex.App.–Fort Worth 2005, no pet.), and must
reverse unless we determine beyond a reasonable doubt that error did not contribute to
Appellant’s conviction or punishment. Alford, 22 S.W.3d at 673.
          Appellant contends the State used his unwarned admission, that he owned the
SUV, to link him to the burglary. Aside from the unwarned statement, the State’s evidence
showed that (1) the police had received anonymous tips that Appellant’s son was involved
in burglaries and was attempting to sell stolen property; (2) Appellant had been observed
numerous times at the residence on 65th Street with his son and the SUV; (3) on the day
of the burglary, Appellant was driving the SUV when Detective Thompson made the stop
approximately an hour after the burglary was reported; (4) the SUV contained burglary
tools in and around the console between the driver’s and front passenger’s seats; (5)
stolen property from a second burglary that occurred nearby that morning was lying on the
front floorboard on the passenger side of the SUV in clear view; (6) Appellant’s version of
how he came to be driving the SUV at the time of the stop and his son’s version conflicted;
(7) Appellant’s version of how the stolen items in the floorboard came to be in the SUV and
his son’s version also conflicted; (8) Velasquez told police he observed two Hispanic males
jump into a moving SUV in the alleyway;


 (9) Velasquez and the victim placed the SUV
and Appellant’s son at the scene of the burglary; (10) the victim also placed Appellant’s son
at the burgled residence several days before; (11) the victim’s brother placed Appellant’s
son, his pickup, and an unknown driver at the victim’s residence several days before the
burglary; and, (12) Trevino, a passenger in the SUV being driven by Appellant at the time
of the stop, had stolen property on his person from a second burglary that occurred that
morning. Having reviewed the entire record, we find beyond a reasonable doubt that the
error did not contribute to Appellant’s conviction. Appellant’s third and fourth issues are
overruled. 
          III.      Extraneous Offense
          Appellant next asserts the trial court erred by admitting extraneous offense evidence
of the Porras burglary that occurred the same morning as the Fulford burglary. He
contends its admission violated Rules 404(b) and 403 because the evidence was irrelevant
and overly prejudicial. He also asserts the trial court erred in its admission because the
State failed to prove the Porras burglary beyond a reasonable doubt.
          As a general rule, to prevent an accused from being prosecuted for some collateral
crime or misconduct, the State may not introduce evidence of bad acts similar to the
offense charged. Roberts v. State, 29 S.W.3d 596, 600-01 (Tex.App.–Houston [1st Dist.]
2000, pet. ref’d). Rule 404(b) provides that evidence of “other crimes, wrongs or acts” is
not admissible to prove a defendant’s character in order to show action in conformity
therewith. Nevertheless, such evidence may “be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.” Tex. R. Evid. 404(b). In addition, a “party may introduce evidence
of other crimes, wrongs, or acts if such evidence logically serves to make more or less
probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact,
or defensive evidence that undermines an elemental fact.” Martin v. State, 173 S.W.3d
463, 466 (Tex.Crim.App. 2005).    
          Whether extraneous offense evidence has relevance apart from character
conformity, as required by Rule 404(b), is a question for the trial court. Moses v. State, 105
S.W.3d 622, 627 (Tex.Crim.App. 2003). So, too, is a ruling on the balance between
probative value and the countervailing factors set out in Rule 403, although that balance
is always slanted toward admission of otherwise relevant evidence. De La Paz v. State,
279 S.W.3d 336, 343 (Tex.Crim.App. 2009). Thus, we review a trial court’s decision to
admit extraneous offenses under an abuse-of-discretion standard; Prible v. State, 175
S.W.3d 724, 731 (Tex.Crim.App. 2005), cert. denied, 546 U.S. 962, 126 S.Ct. 481, 163
L.Ed.2d 367 (2005), and, so long as the trial court’s ruling is within the zone of reasonable
disagreement, there is no abuse of discretion and the trial court’s ruling will be upheld. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh’g). See
Hernandez v. State, 205 S.W.3d 555, 558 (Tex.App.--Amarillo 2006, pet. ref’d). 
           Where the charge is burglary with intent to commit theft, the offense is complete if
the entry is made with the requisite intent, regardless of whether a theft is actually
committed . Moore, 54 S.W.3d at 539. Here, we conclude evidence of the Porras burglary
was admissible to show the intent with which “entry” was made into the Fulford residence,
i.e., intent to commit theft. The Porras burglary was close in time and location to the
Fulford burglary and subsequent stop on 65th Street. Moreover, the SUV driven by
Appellant contained property stolen from the Porras residence but no property stolen from
the Fulford residence. Thus, evidence of the Porras burglary was relevant under Rules
401 and 404(b) to establish an elemental fact, i.e., intent to commit theft. See, e.g., Banda
v. State, 768 S.W.2d 294, 296 (Tex.Crim.App. 1989) cert. denied, 493 U.S. 923, 110 S.Ct.
291, 107 L.Ed.2d 270 (1989) (“an extraneous transaction will be admissible so long as it
logically tends to make the existence of some fact of consequence more or less probable”).
          We must next consider whether the unfair prejudicial effect of the extraneous
evidence substantially outweighed its probative value and, in doing so, we give great
deference to the trial court’s determination of admissibility. Montgomery, 810 S.W.2d at 
391-92. Here, any prejudicial effect of admitting the extraneous offense evidence was
outweighed by its probative value. The evidence of the Porras burglary was near in time
and location to the Fulford burglary and necessary for the jury to consider in its
determination whether the entry into the Fulford residence was for the purpose of
committing theft. Thus, we agree with the trial court’s determination that evidence of the
Porras burglary was not so egregious as to be highly prejudicial. 
          Finally, whether an extraneous offense or bad act is established beyond a
reasonable doubt is a question of fact for the jury, not a preliminary question of
admissibility for the trial court. Mitchell v. State, 931 S.W.2d 950, 953-54 (Tex.Crim.App.
1996). See Nanez v. State, 179 S.W.3d 149, 151-52 (Tex.App.–Amarillo 2005, no pet.).


 
Once all of the evidence was in, the trial court properly instructed the jury that, before it
could consider extraneous act evidence in its determination of guilt or innocence, it must
be satisfied beyond a reasonable doubt that the acts are attributable to the defendant.
          Here, the trial court did exactly what is required when considering the issue of
extraneous offenses. See Jordan v. State, 271 S.W.3d 850, 855-56 (Tex.App.–Amarillo
2008, no pet.). Consequently, the trial court did not abuse its discretion in admitting this
evidence. Appellant’s fifth and sixth issues are overruled.
          IV.      Legal and Factual Sufficiency
          When appellant challenges both legal and factual sufficiency, we are required to
conduct an analysis of the legal sufficiency of the evidence first and then, only if we find
the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence.
Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). In assessing the legal
sufficiency of the evidence, we review all the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. 2007).
          In a factual sufficiency review, we must consider all of the evidence in a neutral light
to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In our analysis
we must determine whether the evidence supporting the verdict is so weak or so against
the great weight and preponderance of the evidence as to render the verdict manifestly
unjust. See Steadman v. State, 280 S.W.3d 242, 246 (Tex.Crim.App. 2009). A wrong and
unjust verdict includes instances in which the jury’s findings “shocks the conscience,” or
clearly demonstrates bias. See Grotti v. State, 273 S.W.3d 273, 280 (Tex.Crim.App.
2008). In doing a factual sufficiency review, we must be mindful that a jury has already
passed on the facts and must give due deference to the determinations of the jury. See
Lancon v. State, 253 S.W.3d 699, 704-05 (Tex.Crim.App. 2008). If our decision is to set
aside the verdict of the jury, our opinion should clearly explain how the evidence supporting
the verdict is too weak on its own or how the contradicting evidence so greatly outweighs
the evidence in support of the verdict. See id. Conversely, if our decision is to uphold a
verdict, we are required to consider the most important evidence that the appellant claims
undermines the jury's verdict and explain why that evidence does not have the persuasive
force the appellant believes is sufficient to overturn the verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex.Crim.App. 2003).
          In a sufficiency of the evidence review, the essential elements of the offense are
those of a hypothetically correct jury charge for the offense in question (i.e., one that
accurately sets out the law and adequately describes the offense for which the appellant
was tried without increasing the state’s burden of proof or restricting the state’s theory of
criminal responsibility.) Hooper, 214 S.W.3d at 14; Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). 
          Circumstantial evidence alone is sufficient to establish the guilt of the accused and
the standard of review as to the sufficiency of the evidence is the same for both direct and
circumstantial evidence cases. Hooper, 214 S.W.3d at 13. Each fact need not point
directly and independently to the guilt of the accused, so long as the cumulative force of
all the evidence, when coupled with reasonable inferences to be drawn therefrom, is
sufficient to support the conviction. Evans v. State, 202 S.W.3d 158, 166 (Tex.Crim.App.
2006).
          Appellant asserts the evidence at trial was legally and factually insufficient because,
although the back door of the residence was kicked in, there was no testimonial or physical
evidence that anyone actually entered the Fulford residence or took any property from that
residence. More specifically, Appellant contends there was no evidence that the “close”
of the Fulford residence was broken. 
          A person commits the second degree felony offense of burglary if he or she enters
a habitation, without the consent of the owner, with the intent to commit a felony, theft or
an assault. Emphasis added. See Tex. Penal Code Ann. § 30.02(a), (c)(2) (Vernon 2003). 
A person “enters” a habitation if he or she intrudes any part of their body, or any physical
object connected to their body. Id. at § 30.02(b). “Entry” is established when the plane of
the opening of the house is broken, and may be accomplished by placing a foot inside a
door frame, by cutting window or door screens, or by breaking a door lock or frame. See
Ortega v. State, 626 S.W.2d 746, 747 (Tex.Crim.App. 1981) (concluding there was “entry”
when evidence showed screen door latch was pulled off, wooden door’s knob was
disabled, and pry marks were on wooden door). See also Moore v. State, 54 S.W.3d 529,
539-40 (Tex.App.–Fort Worth 2001, pet. ref’d) (testimony of 11-year-old victim that
defendant “entered” the house by placing his foot in the door with intent to engage in
sexual contact with the victim held factually sufficient to support conviction for burglary of
a habitation); Williams v. State, 997 S.W.2d 415, 417 (Tex.App.–Beaumont 1999, no pet.)
(evidence of broken padlock and broken door frame on garage established entry into
building as required for burglary of building); Woods v. State, 814 S.W.2d 213, 215-16
(Tex.App.–Tyler 1991, no pet.) (homeowner’s testimony that four window screens and door
screen had been cut, along with police officer’s testimony that defendant was apprehended
nearby with a knife in his hand, was sufficient evidence of accused’s “entry” into
habitation); Hayes v. State, 656 S.W.2d 926, 927 (Tex.App.–Eastland 1983, no pet.) (jury
could properly infer “entry” from presence of lug wrench and hole in the roof of a store). 
Thus, entry can be any breach of the “close” of the residence. 
          The entry element of a burglary offense may be proven by inferences, just as
inferences may be used to prove the elements of any other offense. Lopez v. State, 884
S.W.2d 918, 921 (Tex.App.–Austin 1994, pet. ref’d). Moreover, Section 30.02 “does not
require proof of a completed theft; all that needs to be shown is an attempt to commit a
felony or theft.” Williams, 997 S.W.2d at 418 (emphasis added). 
          At trial, Fulford testified she heard two loud bangs, then a cracking noise, and she
thought someone was in the house. Officer Winters testified there was a shoe print on the
backdoor and, in his opinion, the door had been kicked in or shouldered open with
sufficient force to tear the deadbolt from the door jamb. His photographs showed the back
door opened into the house with the deadbolt torn from the jamb, dangling from the
cracked door frame. Fulford’s grandfather testified the door was “totally blown off” and
“everything was busted on the door.” This testimony along with Officer Winters’s
photographs were sufficient for the jury to find beyond a reasonable doubt that some part
of the burglar’s body, presumably either a shoulder or foot, breached the plane, or “close,”
of the Fulford residence thereby establishing the element of “entry.” Accordingly, having
reviewed the entire record, we find that the jury’s findings were rational and the great
weight and preponderance of the evidence supports, rather than contradicts, the verdict. 
See Williams, 997 S.W.2d at 417 (“the action of breaking the lock and door frame was the
‘breaking of the close’”). Appellant’s first and second issues are overruled.
Conclusion
          The trial court’s judgment is affirmed.
                                                                           Patrick A. Pirtle 

                                                                                  Justice 



Publish.